IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JAMES LUCAS,                    )
                               )
     Plaintiff,                )
                               )
v.                             )        Civil Action No. 1:09cv365
                               )
MICHAEL J. ASTRUE,             )
Commissioner of                )
Social Security,               )
                               )
     Defendant.                )


REPORT AND RECOMMENDATION


     Pursuant to 42 U.S.C. § 405(g), James Lucas ("plaintiff")

seeks judicial review of the final decision of the Commissioner

of Social Security ("defendant") denying plaintiff's claim for

disability insurance benefits under Title II of the Social

Security Act ("SSA" or "the Act"), 42 U.S.C. §§ 401-433.  The

record has been filed and the case is now before the Court on

cross-motions for summary judgment.

     In his Motion for Summary Judgment, plaintiff contends

defendant's decision should be reversed because: (1) the

Administrative Law Judge ("ALJ") improperly rejected the treating

physicians' and psychologist's opinions of disability and

assessments of plaintiff's functional limitations; and (2) the

vocational evidence relied upon by the ALJ to conclude that

plaintiff is able to perform a significant number of jobs omits

1

consideration of his functional limitations.  By contrast,

Defendant's Motion for Summary Judgment contends the decision to

deny plaintiff's benefits should be affirmed because substantial

evidence exists in the record to support the ALJ's decision that

plaintiff was not disabled within the meaning of the Act, and

because the ALJ applied the correct legal standards in reaching

the decision.

## I.  PROCEEDINGS

On September 18, 2006, plaintiff filed an application for

disability insurance benefits ("DIB").  (Administrative Record

("R.") at 127.)  In his application, plaintiff alleged disability

within the meaning of the Act, beginning September 8, 2006, due

to his (1) bi-polar disorder, (2) social anxiety disorder, and

(3) depression  (Id. at 23B, 55, 382-63.)  Defendant denied

plaintiff's application initially, and again upon

reconsideration. (Id. at 63-67, 69-70.)  Plaintiff filed a timely

request for a hearing before an ALJ, and the hearing was held on

July 29, 2008. (Id.)  Plaintiff did not appear at the hearing,

but was represented by Andrew Mathis, a non-attorney. (Id. at

36.)  Tanja H. Hubacker, an impartial vocational expert, also

appeared and testified at the hearing.  (Id.)

On October 27, 2009, the ALJ issued a decision finding that

plaintiff was not disabled within the meaning of the Act because

he did not have an impairment or combination of impairments that

met or medically equaled one of the listed impairments within the meaning of 20 C.F.R. §§ 404.1520(d), 404.1525 or 404.1526. (<u>Id</u>. at 43.) On October 27, 2008, plaintiff requested that the Social Security Appeals Council ("Appeals Council") review the ALJ's decision. (<u>Id</u>. at 1.) The Appeals Council denied plaintiff's request for review on March 18, 2009, thereby rendering the ALJ's decision final. (<u>Id</u>. at 1-4.) Pursuant to 42 U.S.C. § 405(g), plaintiff, having exhausted his administrative remedies, timely filed the instant action for judicial review.

## II. <u>FACTS OF RECORD</u>

### A. <u>Plaintiff's Personal Background</u>

Born on August 22, 1966, plaintiff is now 43 years old. (R. at 92.) Plaintiff completed high school. (<u>Id</u>. at 132.) Plaintiff has worked as a cable technician, carpet cleaner, and most recently, a maintenance tech in an apartment complex. (<u>Id</u>. at 128.) Plaintiff had a prior period of disability from January 1999 until January 2001, when he returned to work. (<u>Id.</u> at 100.)

The ALJ determined that plaintiff was unable to perform his past relevant work because those jobs subjected plaintiff to more than low stress, unskilled tasks and involved more than minimal contact with the public, co-workers, or supervisors. (<u>Id.</u> at 46.)

The ALJ further determined that plaintiff has acquired sufficient quarters of coverage to remain insured through December 31, 2011. (Id. at 37.)

B.   Plaintiff's Medical History

The evidence shows plaintiff has had a history of anxiety for most of his adult life. (Id. at 367.)  On September 8, 2006, Theresa Delawter, M.D., a psychiatrist, placed plaintiff on a leave of absence from work due to anxiety. (Id. at 274.)  On weekly evaluations, plaintiff's concentration was within normal limits. (Id. at 261, 264, 267.)  Plaintiff denied suicidality or homicidality. (Id. at 261, 264, 268.)  No psychosis was noted or reported. (Id. at 261, 265, 268.)  On September 27, 2006, Dr. Delawter noted that plaintiff was goal directed for the future. (Id. at 267.)

After exhausting his leave under the Family Medical Leave Act, plaintiff returned to work in October 2006. (Id. at 422.)  Dr. Delawter reported that plaintiff was improving and was less anxious. (Id. at 423.)  Plaintiff's concentration was within normal limits and his judgment and insight were good for treatment. (Id. at 423.)  Mental status examination remained unchanged, except for some mild to moderate anxiety and depression. (Id. at 391–92, 396–97, 403–04, 413–14, 419–20.)

On a mental status evaluation form dated November 22, 2006, Dr. Delawter reported that plaintiff was cooperative on

examination (Id. at 374.)   Plaintiff was fully oriented, but his mood was depressed and anxious. (Id. at 374.) His memory was intact and he could perform calculations. (Id. at 374.) His judgment was impaired by anxiety. (Id. at 375.) His intelligence was above average, but his cognition was impaired by anxiety. (Id. at 375.) Dr. Delawter stated that plaintiff had been extremely compliant with treatment, except for his difficulty initially in remaining sober. (Id. at 376.) She reported that he was not mood stable despite numerous trials of medications. (Id. at 376.)  Dr. Delawter added that plaintiff had periods of functioning, but his anxiety is persistent and debilitating. (Id. at 376.) Dr. Delawter reported that plaintiff was able to perform activities of daily living, such as personal hygiene, house maintenance, dog care, grocery shopping, and picking up medication. (Id. at 373.)  For example, Plaintiff also visited his mother's home for the holiday, and called upon his insurance agent. (Id. at 381, 384, 413.)

With respect to employment, Dr. Delawter stated that plaintiff does extremely well at work. (Id. at 373.)  She stated that his employer recognizes his contributions, skills, and work ethic. (Id. at 373.) Dr. Delawter stated that plaintiff was offered a promotion, but was unable to take it due to increased interaction with people at work. (Id. at 373.)

Plaintiff quit his job on December 13, 2006, due to anxiety and a lack of energy. (Id. at 387.) Dr. Delawter terminated treatment with plaintiff in January 2007 for a second opinion. (Id. at 377-79.) Upon referral of Dr. Delawter, plaintiff began treatment with Carl Hunt, D.O., a psychiatrist, in January 2007. (Id. at 362-68, 430-53.) On initial mental status examination, plaintiff was friendly, attentive, fully communicative, well-groomed, but appeared anxious. (Id. at 365.) Plaintiff's speech was normal and his language skills were intact. (Id. at 365-66.) Plaintiff's mood was entirely normal with no signs of depression or mood elevation. (Id. at 366.) His affect was appropriate, full range, and congruent with mood. (Id.) He described suicidal ideas, but convincingly denied intentions. (Id.) His insight was normal. (Id.) Plaintiff exhibited signs of anxiety. (Id. at 366.) He was oriented in all spheres. (Id.) Dr. Hunt diagnosed social phobia and assessed a Global Assessment of Functioning (GAF) rating of forty-five. (Id.) He opined that plaintiff could not work. (Id.)

On subsequent visits, plaintiff continued to report no change in his social phobia, but made regular visits to Dr. Hunt in March 2007, June 2007, August 2007, December 2007, and June 2008. (Id. at 363, 443-50, 452-53.) Plaintiff's mood remained euthymic, and treatment notes indicate that the medication was working. (Id. at 363, 443-50, 452-53.)

Dr. Hunt referred plaintiff to Michael Lynch, Ph.D., a psychologist, for counseling. (Id. at 378.) Dr. Lynch noted that plaintiff appeared to be experiencing a chronic sense of anxiety for around two decades. (Id. at 227.) He diagnosed generalized anxiety disorder and dysthymic disorder. (Id.) Plaintiff continued to see Dr. Lynch for weekly counseling sessions through June 25, 2008. (Id. at 223-27.) In March 2008, plaintiff requested that Dr. Lynch write a letter excusing him from appearing at his bankruptcy hearing. (Id. at 224.) Plaintiff was granted the opportunity to testify over the telephone in the presence of a notary public. (Id. at 224.) Plaintiff reported that he made it through the hearing well, though he had to take a Xanax. (Id. at 223.) In March 2008, Dr. Lynch discussed the possibility of plaintiff returning back to work. (Id. at 224.) At the next visit, plaintiff stated that he had decided not to return to work. (Id.) In April 2008, Dr. Lynch again discussed plaintiff returning to work. (Id. at 223.) In June 2008, plaintiff expressed concern about his COBRA insurance running out. (Id.) Dr. Lynch discussed the possibility of plaintiff contacting his employer to see if he could return to work. (Id.) Plaintiff was uncertain about whether he could return to work, but Dr. Lynch said that he would work with plaintiff if he decided to do so. (Id.) In a letter dated July 23, 2008, Dr. Lynch stated that plaintiff would be overwhelmed with anxiety if

required to attend his Social Security disability hearing. (Id. at 222.)

       (1) <u>Opinion Evidence</u>

Dr. Hunt completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form. (Id. at 435-37.) Dr. Hunt indicated that plaintiff had good ability to follow work rules; relate to co-workers; use judgment; interact with supervisors; function independently; understand, remember and carry out simple job instructions; maintain personal appearance; and demonstrate reliability. (Id. at 435-36.) Plaintiff had fair ability to deal with the public, maintain attention and concentration, understand, remember, and carry both detailed and complex job instructions; and behave in a emotionally stable manner. (Id.) According to Dr. Hunt, plaintiff had poor/none ability to deal with work stresses and relate predictably in social situations. (Id.)

Dr. Hunt also completed a Medical Assessment of Mental Status form. (Id. at 438-41.) Dr. Hunt diagnosed social phobia/panic disorder with agoraphobia. (Id. at 438.) He indicated that plaintiff had symptoms of anhedonia, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and hallucinations. (Id. at 438-39.) He opined that plaintiff had marked restriction of activities of daily living, marked

difficulty in maintaining social functioning, deficiencies of concentration, persistence or pace, and repeated episodes of deterioration. (<u>Id.</u> at 440.) He also indicated that plaintiff would have approximately four to five days per month of inability to attend work. (<u>Id.</u> at 441.)

Sandra Francis, Psy.D., completed a Psychiatric Review Technique Form, on which she indicated that plaintiff's bipolar disorder, NOS, and anxiety disorder, NOS, which resulted in only mild restriction in activities of daily living; moderate difficulties in social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (<u>Id.</u> at 344-57.) Dr. Francis also completed the Mental Residual Functional Capacity Assessment form. (<u>Id.</u> at 359-61.) Plaintiff was not significantly limited in the ability to remember locations and work-like procedures and to understand, remember and carry out very short and simple instructions. (<u>Id.</u> at 359.) Plaintiff had no significant limitations in the in the ability to perform activities within a schedule, sustain an ordinary routine without special supervision, or make simple work-related decisions. (<u>Id.</u> at 359.) With regard to social interaction, plaintiff had no significant limitation in the ability to ask simple questions or request assistance, get along with coworkers or peers, or maintain socially appropriate behavior. (<u>Id.</u> at 359-60.) Plaintiff had the ability to be aware

of normal hazards and take appropriate precautions and the
ability to set realistic goals or make plans independently of
others. (<u>Id.</u> at 360.) According to Dr. Francis, plaintiff had
moderate limitations in the ability to understand, remember, and
carry out detailed instructions; maintain attention and
concentration; work in coordination with proximity to others
without being distracted by them; and to complete a normal
workday and workweek. (<u>Id.</u> at 359-60.) Plaintiff had moderate
limitation in the ability to interact appropriately with the
general public, accept instructions, and respond appropriately to
criticism from supervisors. (<u>Id.</u> at 360.) Plaintiff had
moderate limitation in the ability to respond appropriately to
changes in the work setting and to travel in unfamiliar places or
use public transportation. (<u>Id.</u>) Dr. Francis concluded that
plaintiff had no impairment of memory due to his impairment or
restriction in his ability for adaptation. (<u>Id.</u> at 361.) She
noted that plaintiff had difficulty working with or near other
employees without being distracted by them. (<u>Id.</u>) She opined
that he would be able to function in a competitive environment,
especially in a setting that allowed him to work independently
and mostly away from others. (<u>Id.</u>)

C.    <u>July 27, 2008 ALJ Hearing</u>

Plaintiff did not appear at the administrative hearing held
on July 27, 2008. (R. at 49-60.)

10

(1)  <u>Vocational Expert's Testimony</u>

At the hearing, the testimony of the Vocational Expert
("VE"), Tanya Ubacher, revealed the following information.
Plaintiff's past work as a cable technician, carpet cleaner, and
maintenance technician had been light to heavy in exertion and
skilled to semi-skilled.  (R. at 52-53.)

The ALJ asked VE Ubacher to consider a hypothetical worker
of plaintiff's age, education and vocational background.  (<u>Id</u>. at
53.)  The ALJ asked whether a person who can perform activity at
all exertional levels, but who is limited to performing simple,
routine, unskilled tasks involving no more than minimum contact
with the public, co-workers, or supervisors, and no more than
occasional stress, excluding production line work, could perform
plaintiff's past work.  (<u>Id.</u>)  VE Urbacher responded that a
person with such limitations could not perform plaintiff's past
work.  (<u>Id.</u>)  The ALJ asked VE Urbacher to identify whether there
are any jobs a person with the limitations set forth in the
hypothetical could perform.  (<u>Id.</u>)  In response, VE Urbacher
testified that the limitations listed in the first hypothetical
would result in the following possible jobs for plaintiff:

(1) medium, unskilled level:

(a) packer position, with 40,000 jobs nationally and
800 locally;

(b) floor waxer, with 30,000 jobs nationally and 500 locally;

(c) hospital cleaner, with 150,000 jobs nationally and 1,000 locally.  (<u>Id.</u>)

In a second hypothetical, the ALJ asked VE Urbacher to consider a person with the limitations of hypothetical number one, except the person has marked difficulties in social functioning and is unable to have even minimum contact with co-workers, supervisors, or the public.  (<u>Id.</u> at 54.)  The ALJ asked whether VE Urbacher could identify any work for such a person.  (<u>Id.</u>)  VE Urbacher testified that there is no work consistent with the ALJ's second hypothetical.  (<u>Id.</u>)

Moreover, VE Urbacher stated in response to questioning by plaintiff's counsel that there is no work an individual who is unable to deal with normal work stresses, such as being able to show up for work on time and deal with a supervisor on a minimum basis, is able to perform.  (<u>Id.</u> at 55.)  The VE was asked to comment on whether there is a cumulative effect of moderate limitations such as those set out by the DDS examiner.  (<u>Id.</u> at 56.)  The VE was asked to consider the cumulative effect of slight reductions in productivity, such as 3%, in each area of moderate limitation.  (<u>Id.</u>)  She responded that if the cumulative effect of slight reductions in productivity due to moderate limitations in areas such as being able to deal with changes in

the work setting, accepting instruction from supervisors,
completing a normal work day, maintaining attention and
concentration reaches 15 to 18%, there is no work because that
loss of production is beyond what employers will tolerate. (<u>Id.</u>
at 57.)

### III. <u>APPLICABLE LAW</u>

To be found disabled, a claimant must have:

> an inability to do any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or can
> be expected to last for a continuous period of not less than
> twelve months.

42. U.S.C. § 423(d)(1)(A). <u>See also</u> 20 C.F.R. § 404.1505(a).

Defendant's regulations require an ALJ to evaluate a
person's claim for disability insurance benefits under a five-
step sequential process (the "process"). 20 C.F.R. §§
404.1520(a); <u>Reichenbach v. Heckler</u>, 808 F.2d 309, 311 (4th Cir.
1985). The process requires defendant to consider whether a
claimant: (1) is currently engaged in substantial gainful
activity[1]; (2) has a medically determinable impairment that is

---

[1] Substantial gainful activity (SGA) is defined as work
activity that involves doing significant mental or physical
activities and work that is usually done for pay or profit,
whether or not a profit is realized. (20 C.F.R. § 404.1572(a)-
(b).; R. at 37.) If an individual engages in SGA, he is not
disabled regardless of how severe his physical or mental
impairments are and regardless of his age, education and work
experience. (<u>Id.</u>) If the individual is not engaging in SGA, the
analysis proceeds to the second step. (<u>Id.</u>)

"severe" or a combination of impairments that is "severe;"[2] (3)

has an impairment that meets or equals the requirements of a

"listed" impairment;[3] (4) has the residual functional capacity[4]

to return to his past work;[5] and (5) if not, whether he can

---

[2] An impairment or combination of impairments is "severe"
within the meaning of defendant's regulations if the impairment
significantly limits an individual's ability to perform basic
work activities. (R. at 37.) An impairment is "not severe" when
medical and other evidence establish only a slight abnormality or
a combination of slight abnormalities that would have no more
than a minimal effect on the individual's ability to work. (Id.;
20 C.F.R. § 404.1521.) If the individual does not have a severe
medically determinable impairment, he is not disabled, but if he
does have a severe impairment, the analysis proceeds to the third
step. (Id.)

[3] A "listed" impairment is one that exists in the list and
produces the associated symptoms contained in 20 C.F.R. Part 404,
Subpart P, Appendix 1. A claimant can satisfy step three by
showing that he has a listed impairment or that he has more than
one impairment that, when combined, result in symptoms of equal
severity and duration as a listed impairment. 20 C.F.R. §
404.1523. If the individual's impairment or combination of
impairments meets or equals the criteria of a listing and meets
the duration requirement outlined in 20 C.F.R. § 404.1509, the
claimant is disabled. (R. at 37.) If the impairment does not
meet or equal the criteria, the analysis proceeds to the next
step. (Id.)

[4] As part of step four, the ALJ must determined the
claimant's residual function capacity ("RFC") as outlined in 20
C.F.R. § 404.1509. An individual's RFC is his ability to do
physical and mental work activities on a sustained basis despite
limitations from his impairments. (R. at 38.) In determining
the RFC, the ALJ must consider all of the individual's
impairments, including impairments that are not severe. (Id.; 20
C.F.R. §§ 404.1520(e) and 404.1545.)

[5] Past relevant work is worked performed, either as the
claimant actually performed it or as it is generally performed in
the national economy, within the last 15 years or 15 years prior
to the date that disability must be established. (R. at 38.)
The past relevant work must have lasted long enough for the

perform other work in the national economy.[6]  (R. at 37-38.)

Although the claimant bears the burden of proving disability, a

limited burden shifts to the defendant in the last step.  (<u>Id.</u> at

38.)  In order to support a finding that the individual is not

disabled, defendant must provide evidence demonstrating that

other work exists in significant numbers in the national economy

that plaintiff can do, given plaintiff's RFC, age, education and

work experience.[7]  (<u>Id.</u>; 20 C.F.R. §§ 404.1512(g) and

404.1560(c).)

## IV.  <u>STANDARD OF REVIEW</u>

This Court may not review defendant's decision <u>de</u> <u>novo</u>, but

instead must determine whether defendant's decision is supported

by substantial evidence in the record and whether defendant

---

individual to have learned to do the job and have been SGA.
(<u>Id.</u>; 20 C.F.R. §§ 404.1560(b) and 404.1565.)  If the plaintiff
has the RFC to do his past relevant work, he is not disabled, but
if he is unable to do any past relevant work, the analysis
proceeds to the next step.  (<u>Id.</u>)

[6] In making this last determination, the ALJ must take the
individual's age, RFC, education and work experience into
account.  (R. at 38.)  If the individual is able to do other
work, he is not disabled.  (<u>Id.</u>)  If the individual is not able
to do other work and meets the duration requirement, he is
disabled.  (<u>Id.</u>)

[7] Defendant may meet the burden of showing other jobs
through use of the Medical-Vocational Guidelines of the
regulations or through the testimony of a vocational expert.  (20
C.F.R. Part 404, Subpart P, Appendix 2.)  Where plaintiff's RFC
is affected by factors which may not be reflected in the criteria
of the Medical-Vocational Guidelines, the ALJ may need to obtain
evidence from a VE to ascertain specific jobs which would
accommodate the individual's RFC.

15

applied the correct law.  42 U.S.C. § 405(g); <u>Richardson v.</u>

<u>Perales</u>, 402 U.S. 389, 401 (1971); <u>Hays v. Sullivan</u>, 907 F.2d

1453, 1456 (4th Cir. 1990); <u>Coffman v. Bowen</u>, 829 F.2d 514, 517

(4th Cir. 1987).  If so, then defendant's findings are

"conclusive," even if this Court believes defendant's assessment

of the record was incorrect.  42 U.S.C. § 405(g); <u>Smith v.</u>

<u>Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986); <u>see also</u> <u>Laws v.</u>

<u>Celebreeze</u>, 368 F.2d 640, 642 (4th Cir. 1966) (It is not "our

function to substitute our judgment for that of the Secretary if

his decision is supported by substantial evidence.").

       "Substantial evidence in the record" means "such relevant

evidence as a reasonable mind might accept as adequate to support

a conclusion" and "consists of more than a mere scintilla . . .

but may be somewhat less than a preponderance" of evidence.

<u>Hays</u>, 907 F.2d at 1456 (internal citations and quotation marks

omitted).  The correct law to be applied includes the SSA, its

implementing regulations, and controlling case law.  <u>See</u> <u>Coffman</u>,

829 F.2d at 517-518.  With this standard in mind, this Court next

evaluates the ALJ's findings and decision.

V.  <u>ALJ's FINDINGS AND DECISION</u>

       In this case, the ALJ made the following findings.

Plaintiff meets the insured status requirements of the Act

through December 31, 2010.  (R. at 38, Finding 1.)  Plaintiff had

not engaged in substantial gainful activity since his alleged

16

disability onset date, September 8, 2006. (<u>Id.</u>, Finding 2.)
Plaintiff has the following severe impairments under 20 C.F.R.
§ 404.1571 *et seq.*: anxiety disorder and affective disorder.
(<u>Id.</u>, Finding 3.) The ALJ found that plaintiff does not have an
impairment or combination of impairments that meets or medically
equals one of the listed impairments in 20 C.F.R. §§ 404.1525 and
404.1526. (<u>Id.</u> at 43, Finding 4.)

The ALJ further determined that plaintiff has the residual
functional capacity to perform a full range of work at all
exertional levels. (<u>Id.</u> at 46, Finding 5.) However, due to
anxiety, he has moderate limitations with respect to activities
of daily living, moderate limitations in maintaining social
functioning, and moderate limitations in concentration,
persistence, or pace. (<u>Id.</u> at 46, Finding 5.) Because of these
limitations, the ALJ found that plaintiff is limited to simple,
routine, unskilled tasks involving no more than minimal contact
with the public, co-workers, or supervisors, and minimal stress
(excluding production-line work). (<u>Id.</u> at 46, Finding 5.) The
ALJ found that plaintiff is unable to perform any past relevant
work. (<u>Id.</u>, Finding 6.)

Plaintiff was born on August 22, 1966, and was 40 years old,
which is defined as a younger individual under 20 C.F.R. §
404.1563, on the alleged disability onset date. (<u>Id.</u>, Finding
7.) Plaintiff has at least a high school education and is able

to communicate in English, under 20 C.F.R. § 404.1564. (<u>Id.</u>,
Finding 8.) Transferability of job skills is not material to the
determination of disability because using the Medical-Vocational
Rules as a framework supports a finding that plaintiff is "not
disabled," whether or not the claimant has transferable job
skills. (<u>Id.</u>, Finding 9.) Considering the plaintiff's age,
education, work experience, and residual functional capacity,
there are jobs that exist in significant numbers in the national
economy that the claimant can perform. (<u>Id.</u>, Finding 10.) The
ALJ found that plaintiff has not been under a disability, as
defined under 20 C.F.R. § 404.1520(g) from September 8, 2006
through the date of the ALJ's decision. (<u>Id.</u> at 47, Finding 11.)

A. <u>Step Three: Presumptive Disability Under Listings 12.04
and/or 12.06</u>

In his brief, plaintiff asserts that Dr. Hunt stated that
plaintiff has the symptoms and functional limitations that meet
the criteria of both Listings 12.04 (Affective Disorder) and
12.06 (Anxiety-Related Disorder). (Pl.'s Memo at 19.) Plaintiff
avers that the ALJ improperly rejected, discounted, and ignored
Dr. Hunt's assessments of plaintiff's functional limitations.

In order to meet a listing, plaintiff must show that all
criteria are met. In this case, the ALJ determined that
plaintiff did not meet or equal the "B" criteria of listings
12.04 and/or 12.06. (R. at 43.) Plaintiff must demonstrate the

18

requisite level of severity in at least two of the subsection B
criteria:

    1. Marked restriction of activities of daily living;

    2. Marked difficulties in maintaining social functioning;

    3. Deficiencies of concentration, persistence or pace
    resulting in frequent failure to complete tasks in a timely
    manner (in work settings or elsewhere); or

    4. Repeated episodes of deterioration or decompensation in
    work or worklike settings which cause the individual to
    withdraw from that situation or to experience exacerbation
    of signs and symptoms (which may include deterioration of
    adaptive behaviors).

20 C.F.R. pt.404, subpt. P, app. 1, §§ 12.04(B), 12.06(B).

On a check-off form apparently provided by plaintiff's
representative to complete, Dr. Hunt checked boxes to indicate
that plaintiff had a marked restriction in his performance of
daily living activities, marked difficulty in social functioning,
marked deficiencies in concentration, and repeated episodes of
deterioration or decompensation. (R. at 438-41.) However, the
progress reports and treatment notes in the record provide
significantly more helpful information in evaluating plaintiff's
limitations than this check-off form, which consists of
checkmarks and little explanation. As Dr. Hunt failed to provide
any written reports that comport with his opinion on the check-
off form, it constitutes weak evidence.

The undersigned finds that ample evidence in the record,
particularly the opinion of the state agency physician, Dr.

Francis, supports the ALJ's determination that plaintiff had moderate difficulty maintaining social functioning, moderate difficulty maintaining concentration, persistence or pace; and no repeated episodes of decompensation, and therefore fails to demonstrate the requisite level of severity under the subsection B criteria. (<u>Id.</u> at 43-44.)

State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. 20 C.F.R. § 404.1527(f)(2)(I). With regard to activities of daily living, plaintiff is independent in caring for his personal needs and also cares for his pet dog. (R. at 373.) He goes outside daily, drives an automobile, and shops for groceries. (<u>Id.</u> at 373, 384.) He has no difficulties with handling his financial affairs. (<u>Id.</u> at 223-24.) He attends mental health counseling on a regular basis. (<u>Id.</u> at 180- 200, 221-28, 230-35, 260-343, 362-428, 430-53.) The ALJ found that plaintiff had moderate, though not severe, difficulties in social functioning, as the evidence shows that he was isolative, stutters when anxious, he forgets things easily unless he writes them down, and is afraid of being around others, especially large groups. (<u>Id.</u> at 43). The ALJ also found that plaintiff had moderate difficulties with regard to concentration, persistence or pace, as he has difficulty concentrating when his

anxiety level is high. (Id.)  With respect to Dr. Hunt's opinion regarding episodes of deterioration or decompensation, plaintiff has never been hospitalized for psychiatric reasons. (Id. at 42). Because Dr. Hunt's opinion is not consistent with the other evidence of record and was also based on plaintiff's description of his symptoms, the ALJ did not give Dr. Hunt's opinion significant weight. (Id. at 42.)  20 C.F.R. § 404.1527(d)(2)-(4). The undersigned finds that such a conclusion is not improper under the circumstances of this case.

Furthermore, the ALJ found that plaintiff did not meet the "C" criteria of Listing 12.04 and/or 12.06.  To meet the "C" criteria of Listing 12.04, a claimant must show medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following:

> 1. Repeated episodes of decompensation, each of extended duration;
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years ability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt.404, subpt. P, app. 1, § 12.04(c).

21

As noted by the ALJ, plaintiff had never been hospitalized for psychiatric reasons (R. at 44.) The undersigned finds that the ALJ's finding that plaintiff also fails to meet the "C" criteria of Listing 12.06, which requires a showing of a "complete inability to function independently outside the area of one's home," is not improper under the circumstances present in this case. 20 C.F.R. pt.404, subpt. P, app. 1, § 12.06(c). The Court deems reasonable the ALJ's conclusion that the record would contain evidence of hospitalizations had plaintiff suffered from extended periods of decompensation.

As shown in the decision, the ALJ considered the medical opinion evidence and objective evidence in the record and provided reasons for the weight given to those opinions. (R. at 38-47.) The undersigned finds that the ALJ's finding that plaintiff fails to proffer evidence that he meets the "B" or "C" criteria of Listings 12.04 and 12.06 is not improper, as generous amounts of information in the record supports such a conclusion.

B.    Step Four: Residual Functional Capacity

The ALJ determined that plaintiff had severe impairments of anxiety disorder and affective disorder. (R. at 38.) The ALJ further determined that plaintiff had the residual functional capacity to perform work at all exertional levels, but due to anxiety, was limited to simple, routine, unskilled tasks involving no more than minimal contact with the public, co-

22

workers, or supervisors, and minimal stress, excluding production-line work. (Id. at 46.)

As noted above, residual functional capacity refers to what a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his own limitations. 20 C.F.R. § 404.1545(a). Notably, the final responsibility for determining a claimant's residual functional capacity is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. § 404.1527(e)(2), (e)(3). Plaintiff avers that, in determining plaintiff's residual functional capacity, the ALJ improperly rejected, discounted, and ignored the treating physicians' and psychologist's opinions of disability and assessments of plaintiff's functional limitations.

First, the undersigned finds that the ALJ's residual functional capacity assessment is consistent with the objective medical evidence of record. The objective medical evidence does not support plaintiff's claim of disabling social phobia. Notes from Dr. Delawter through January 2007 indicate that except for some mild to moderate anxiety and depression, plaintiff's mental status examinations were essentially unremarkable. (R. at 261-62, 264-65, 267-68, 270-72, 377-78, 381-82, 384-85, 387-88, 391-92,

396-97, 403-04, 413-14, 419-20, 422- 23.)  Plaintiff was cooperative on examination and fully oriented. (Id. at 374.)  His concentration remained within normal limits. (Id. at 264, 267, 270, 377, 381, 384, 387, 391, 396, 403, 413, 419, 422.)  No psychosis was noted or reported. (Id. at 262, 265, 268, 272, 382, 385, 388, 392, 397, 404, 414, 420, 423.)  His memory was intact and he could perform calculations. (Id. at 374.)

While under the care of Dr. Hunt, plaintiff was friendly, attentive, fully communicative, well-groomed, but anxious. (Id. at 452.)  Plaintiff's mood was entirely normal with no signs of depression or mood elevation. (Id. at 443-53.)  His affect was appropriate, full range, and congruent with mood. (Id. at 452-53.)  Suicidal ideas were described, but intentions convincingly denied. (Id. at 443-53.)  Insight was normal. (Id. at 453.)  He was oriented in all spheres. (Id. at 443-53.)  He had no evidence of a cognitive impairment. (Id. at 445, 448.)  Plaintiff did not require hospitalization for his psychiatric impairment.

Defendant's regulations provide that, where an opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight.  20 C.F.R. § 404.1527(d)(4)(2009).  The undersigned notes that substantial evidence in the record is inconsistent with Dr. Hunt's assessments that plaintiff had a GAF score of forty-five and was unable to work. (R. at 366.)  Consequently, the

undersigned finds that the ALJ's decision not to give controlling weight to the assessment of plaintiff's treating physician, Dr. Hunt, was not improper.

Plaintiff avers that Dr. Francis improperly failed to consider Drs. Hunt and Delawter's GAF scores. As noted above, the ALJ properly declined to give Dr. Hunt's GAF controlling weight because it was inconsistent with substantial evidence in the record. Additionally, according to defendant's regulations, the GAF score of forty-five reported by Dr. Hunt does not support a finding of disability. See 65 Fed. Reg. 50746, 50765 (2000) ("The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in [the agency's] mental disorders listings."). In July 21, 2006, prior to the relevant period, Dr. Delawter also rated plaintiff's GAF as forty-five. (R. at 279.) Dr. Delawter's assessment of plaintiff's functioning on July 21, 2006, is not relevant to the determination of whether plaintiff was disabled during the relevant period of September 8, 2006, to October 27, 2008.

Additionally, Dr. Hunt's GAF rating and opinion that plaintiff was unable to work was unsupported by his own progress notes, which continuously show that plaintiff was friendly, attentive, fully communicative, well-groomed, but anxious. (Id.

at 452.) Plaintiff's mood was entirely normal with no signs of depression or mood elevation. (Id. at 443-53.) His affect was appropriate, full range, and congruent with mood. (Id. at 452-53.) Suicidal ideas were described, but intentions convincingly denied. (Id. at 443-53.) His insight was normal. (Id. at 453.) He was oriented in all spheres. (Id. at 443-53.) He had no evidence of a cognitive impairment. (Id. at 445, 448.)

Moreover, Dr. Hunt's opinion that plaintiff had repeated episodes of decompensation is not supported by the objective medical record. (Id. at 42.) To the contrary, plaintiff has not been hospitalized for psychiatric reasons. (Id. at 44.) Significantly, Dr. Lynch did not opine that plaintiff was disabled. He discussed the possibility of plaintiff returning to work in March, April, and June 2008. (Id. at 223-24.) While plaintiff avers that the ALJ makes an "assumption" that plaintiff is able to sustain employment due to Dr. Lynch's discussions with plaintiff, the record reflects that the ALJ properly considers this evidence along with the other evidence of record. (Pl's Memo at 20.)

The undersigned finds that it was not improper for the ALJ to decline to afford significant weight to Dr. Hunt's GAF rating of forty-five, as it was not supported by objective clinical findings and was inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d).

The ALJ adopted the opinion of Dr. Francis, who opined that plaintiff had the residual functional capacity to work in a competitive environment, especially in a setting that allowed him to work independently and mostly away from others.  (R. at 361.) Plaintiff challenges the ALJ's reliance on the state agency physician opinion in finding plaintiff not disabled.  Based on Agency regulations and Fourth Circuit case law, however, the ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence in determining eligibility for social security disability benefits. Johnson v. Barnhart, 434 F.3d 650, 654-55 (4th Cir. 2005).  Rather, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. Id.  The opinion of Dr. Francis was based on the examination findings, plaintiff's own statements regarding his limitations, and his activities of daily living.  (Id. at 361.)  While Dr. Hunt opined that plaintiff was unable to work, the undersigned finds that the objective examination findings, opinion of the state agency physician, Dr. Francis, and plaintiff's activities of daily living support the ALJ's finding of not disabled.

Plaintiff avers that the ALJ's rationale for the determination that plaintiff's description of his limitations is not credible ignores or mischaracterizes much of the supportive evidence.  This Court must give great deference to the ALJ's

27

credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996).

The ALJ performed the required Craig analysis and provided an explicit rationale to support his conclusions. (R. at 44-45.) As the ALJ noted, once an underlying physical or mental impairment that could reasonably be expected to produce the claimants pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of plaintiff's symptoms to determine the extent to which they limit

28

the plaintiff's ability to do basic work activities. Whenever statements about the intensity, persistence, or functionally limiting effects of these symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record. After considering the record as a whole, the ALJ concluded that plaintiff's assertions regarding the severity, persistence, and limiting effects of his symptoms are not consistent with the medical evidence or the evidence provided regarding his actual physical activities and plaintiff's statements about his symptoms are not credible. Because the plaintiff did not appear at the hearing, the ALJ properly used other evidence of record to assess the plaintiff's credibility. (Id. at 44.)

The undersigned finds that the ALJ's determination that the evidence of record fails to substantiate that plaintiff's limitations in social functioning are of the degree alleged was proper. Notwithstanding plaintiff's allegation of disabling social phobia, plaintiff was able to perform activities of daily living, such as personal hygiene, house maintenance, dog care, grocery shopping, and picking up medication. (Id. at 373.) Plaintiff also visited his mother's home for the holiday and visited the office of his insurance agent. (Id. at 381, 384, 413.) He was able to interact with strangers, including

testifying over the telephone in the presence of a notary public at his bankruptcy hearing. (Id. at 223-24.)  Plaintiff regularly attended appointments with Drs. Delawter, Hunt, and Lynch. (Id. at 180-200, 221-28, 230-35, 260-343, 362-428, 430-53.)  The ALJ considered all of the evidence, including the objective clinical signs, medications, physical functional limitations made by the state agency medical consultant, opinions of the treating physicians, and plaintiff's testimony, before concluding that plaintiff's assertions concerning his impairments and their impact on his condition were not fully credible. (Id. at 45.)

Plaintiff argues that the ALJ's assertion that plaintiff was able to attend his bankruptcy hearing misstates the evidence that he was not able to attend the hearing. (Pl's Memo at 24.)  In his decision, the ALJ states that plaintiff was "able to attend the bankruptcy hearing." (R. at 41.)  The evidence of record shows that plaintiff was able to attend the hearing by conference call at his attorney's office, in the presence of a notary public. (Id. at 223-24.)  The undersigned does not find that there is a material difference between the ALJ's discussion of the bankruptcy hearing and the evidence of record.

The undersigned finds that substantial evidence supported the ALJ's reasons for giving more weight to the opinion of the state agency medical consultant, Dr. Francis, than to the opinions of Drs. Delawter and Hunt.

## C.  Step 5: Available Jobs for Plaintiff

At step five of the sequential evaluation process, the ALJ relied upon a qualified professional to identify jobs that plaintiff could perform. (R. at 53–54.)  The ALJ asked the vocational expert whether work existed in the national economy for a hypothetical individual of plaintiff's age and vocational background, who had the residual functional capacity to perform work at all exertional levels, and is limited to simple, routine, unskilled tasks involving no more than minimal contact with the public, co-workers, or supervisors, and minimal stress, excluding production-line work.  (Id. at 53.)  The VE testified that the hypothetical individual could perform work in the national economy, including the representative occupations of packer, floor waxer, and hospital cleaner. (Id. at 53.)

Plaintiff contends that the ALJ's hypothetical omitted limitations assessed by Dr. Delawter and Dr. Hunt, who found plaintiff to have marked limitations in every functional domain and to have poor to no ability to deal with work stresses. (Pl.'s Memo at 25.)  The ALJ was not required to include such limitations in the hypothetical question because, based upon his consideration of the record evidence, the ALJ did not accept the limitations assessed by Dr. Delawter and Dr. Hunt. (Id. at 42.)  Because the VE's testimony supports the ALJ's conclusion that

plaintiff was not disabled, the undersigned finds that substantial evidence supports the decision.

    D. <u>Subsequent Award of Disability</u>

  Plaintiff seems to argue that this case should be remanded to the Commission in light of a subsequent award of disability insurance benefits by the defendant to the plaintiff. The period of review before this Court begins on September 8, 2006, plaintiff's alleged onset date, and ends on October 27, 2008, the date of the ALJ's decision.

  Following the date of the ALJ's decision to deny benefits on October 27, 2008, however, the plaintiff submitted a subsequent application for disability insurance benefits, for a later time period, which was approved. (Def.'s Ex. No. 3, Award Letter.) For that subsequent application, the Agency considered and awarded benefits based on evidence submitted by the plaintiff on August 17, 2009. This evidence included physician treatment notes which covered the period February 23, 2009, to July 21, 2009. The subsequent award of benefits was not based on the same evidence before the ALJ; it was based on evidence which arose following the denial of disability insurance benefits by the ALJ in this case on October 28, 2008. In determining that plaintiff was not disabled, the undersigned finds that the ALJ properly considered evidence through July 23, 2008.

Additionally, the undersigned finds that the subsequent award in this case cannot be the basis of a remand under sentence six of 42 U.S.C. 405(g) because it is not relevant. A reviewing court may remand a case to the Commissioner on the basis of newly discovered evidence if four prerequisites are met: (1) there must be "at least a general showing of the nature" of the new evidence; (2) the evidence must be "material" to the extent the Commissioner's decision "might reasonably have been different" had the new evidence been before his; (3) the evidence must be "relevant" to the determination of disability at the time the application was first filed and not "merely cumulative"; and (4) there must be "good cause" for the claimant's failure to submit the evidence when the claim was first before the Commissioner. Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985).

The notice of award of benefits is not relevant to the issues before this Court and, therefore, is not material. The award of benefits in the subsequent application does not relate to the time period at issue in this case, which ended with the ALJ's decision on October 27, 2008. (R. at 36-48.) The subsequent award of benefits begins on October 28, 2008. (Def.'s Ex. No. 3, Award Letter). The undersigned finds that the agency's determination that plaintiff became disabled after the ALJ's October 27, 2008 decision is not time relevant and is not material. The question before this Court is not whether an

alternative decision could have been supported, but whether the final agency decision was supported by substantial evidence.  The undersigned finds that the ALJ's decision was supported by substantial evidence.

## VI.  <u>RECOMMENDATION</u>

For the reasons set forth, the undersigned Magistrate Judge finds defendant's decision in this matter is supported by substantial evidence and does not contain legal error. Therefore, the undersigned Magistrate Judge recommends that the Motion for Summary Judgment by defendant, Michael J. Astrue, Commissioner of Social Security, be GRANTED, and the Motion for Summary Judgment by plaintiff, James Lucas, be DENIED.  An appropriate Order shall be issued.

## V. <u>NOTICE</u>

The parties are advised that exceptions to this Report and Recommendation pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure must be filed 14 days after service.  A failure to object waives appellate review of a judgment based on this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and defendant.

_____/s/_____
                                        THERESA CARROLL BUCHANAN
                                        UNITED STATES MAGISTRATE JUDGE


May 17, 2010
Alexandria, Virginia